WERTIE LEE DEYOE, as Executrix, etc., of AUGUSTUS DEYOE, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, November 15, 1923.

State — claim against State for death of plaintiff's testator — decedent fell into creek in night time — at point of accident near bridge there was embankment without barrier — said road at point of accident was part of highway and not part of bridge approach — State is liable.

The road at the point where decedent fell over an embankment and into a creek, which embankment was not protected by a barrier, was a part of the highway and not an approach to the bridge spanning the creek, since it appears that there was no evidence of any artificial fill to reach the level of the bridge floor or of any other artificial construction necessary to bring the highway up to the level of the bridge, and since it appears further that the plans and specifications for the construction of the highway in question provided for construction up to the floor of the bridge. Accordingly, the State is liable for the death of plaintiff's testator, since the highway is a county highway, the expense of the construction of which was shared by the State and county and the maintenance of which is under the patrol system.

APPEAL by the claimant, Wertie Lee Deyoe, as executrix, etc., from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 23d day of February, 1923, dismissing the claim upon the merits.

*Butler, Kilmer & Corbin [Walter P. Butler, Harold H. Corbin* and *Charles L. Hoey* of counsel], for the appellant.

*Carl Sherman, Attorney-General [W. J. Wetherbee, Deputy Attorney-General,* of counsel], for the respondent.

McCANN, J.:

The appellant herein is the executrix of the last will and testament of Augustus Deyoe, who met his death on the 3d day of March, 1917, while driving along the public highway to his home from the village of Schuylerville. He had a horse and light cutter. He was last seen about eleven o'clock in the evening of March second, when he took his horse from a stable where it had been prior to leaving for his home. The highway along which he was traveling intersected Fish creek at or near the hamlet of Grangerville. His body was found in the early morning, lying across a dam near a bridge crossing said creek. He was dead and the horse and cutter which he had driven were in the creek near by.

The highway over which the decedent traveled was a so-called county highway, No. 244. The highway runs east and west and

7

Fish creek flows to the north under said bridge, which is of iron or steel construction and was erected in 1882. It consists of two spans resting on abutments, one on either end of the bridge and one in the center of the stream. At the easterly end of said bridge there was a wooden sign prohibiting the passage of loads over said bridge exceeding a certain weight. This sign was on the northerly side of the highway and just to the east of the east end of the bridge. On the morning when decedent's body was found, there were fresh marks on the sign in question and the decedent's cutter was bent up in front and had white paint marks thereon, being the same color of paint as upon the sign. On the northerly side of the highway and immediately east of the bridge the land sloped abruptly to the edge of the creek at an angle of approximately forty-five degrees. On the day in question this slope was covered with ice or frozen snow which extended from the roadway to the creek. The surface of such snow or ice showed that it had been scraped off. There was no barrier along the roadway at the place in question and the absence of such barrier is claimed as a ground of negligence in this case. This claim has been tried twice. On the first trial in the Court of Claims the claim was dismissed at the close of the claimant's case (112 Misc. Rep. 423); the judgment was reversed and a new trial directed by this court with an opinion which is reported in 197 Appellate Division, 716. Upon the second trial the claim was dismissed on the merits. The basis of the claim against the State for liability is the fact that the highway in question is a county highway, the expense of the construction of which was shared by the State and county and the maintenance of which was under the patrol system, so called, charging the maintenance thereof against the State. The only question at issue upon this charge of liability is the question of whether or not that part of the driveway where the accident occurred was an " approach " to the bridge in question. If it is a part of the bridge, being an approach to the same, the liability for failure to maintain a barrier, if any were necessary, is on the town of Saratoga in which said bridge is located. If, on the other hand, the location is a part of the highway and does not constitute an approach to the bridge, the liability is upon the State. (See Highway Law, § 176, as amd. by Laws of 1916, chap. 578. Since amd. by Laws of 1922, chap. 371.) The court below has found as a fact that the decedent slipped, slid or fell over and down the slope along the northerly side of said embankment or fill constituting the easterly approach of the bridge into the waters of Fish creek, as a result of which he was drowned; that he was free from contributory negligence; that the place in question was one which in the exercise of reasonable care and prudence should

have been guarded by a barrier and that the absence of such barrier at such point was the proximate cause of the death of the decedent. The court below dismissed the claim upon the sole ground that the place of the accident was an approach to the bridge and, therefore, a part of said bridge and not a part of the highway and that consequently no duty rested upon the State to maintain the bridge or erect guardrails or barriers thereon. On the first trial an opinion was written which is reported in 112 Miscellaneous Reports, 423. No opinion was written on the second trial. On the second trial, however, in a discussion between the attorneys and the court, the latter stated very clearly the theory upon which his decision is based, as follows: " My conception of the situation is that so much of this roadway as lay within the original bank of the creek which had to be filled and retained there in order to furnish access to the bridge structure proper is the approach — speaking of the approach as distinguished from the rest of the roadway. I wouldn't have a particle of difficulty with this case if I could have that made plain to me."

The language of the court as above expressed carries with it the suggestion that there has been a fill or artificial construction between the present east line of the bridge and some point easterly thereof where there was an original bank of the creek, or in other words that the bank of the creek has receded from where it originally was located. There is no evidence in this case to show that there ever was any artificial fill or that there was any need thereof in order to create the so-called embankment which now constitutes the highway. There is no evidence of any artificial construction. So far as it appears from the record, the highway follows the grade of the land as it is and has been for all time. There is evidence to show that there has been certain filling or grading at times to fill up holes caused by the washing of the creek across the highway and there is evidence to show that in past years logs were drawn out from the creek across the highway in question, causing depressions to be made where they were " snaked " from the creek on to the bank and across the road. It seems, however, that the court could not have been thoroughly satisfied that there was artificial construction created in the building of this road. It appears in the discussion between the court and counsel, in reply to a question addressed by counsel to the court, as to what evidences he found of artificial situation, the court replied: " Coupled by, or coupled with my own general observation of streams and bridges and abutments. * * * There isn't anything to indicate anything else, to my mind. Now the extent of it, how far back it goes, I am not able at the moment to say. But I think that is

all there is of this case,— is right there; to tell how far back it goes."

It is true that the general appearance of the photographs introduced in evidence would indicate that there had been a grading in or embankment in order to create this road, but the record is void of any evidence to that effect. Witness W. J. Thorne, who resides within 250 feet of the bridge, testified that he knew the location for fifty-eight years; that there was no change in the bridge except one pier was placed in the stream instead of three and during all his acquaintance with the location there never had been any change in the location of the abutments or fill east of the bridge; that water had run over the road and the timbers had been pulled from the stream as above suggested. Witness Winney also testified that in thirty-five years' acquaintance with the location he never had known of any artificial filling. Much stress has been placed upon the fact that the east bank of the creek is now located farther to the east than formerly. The evidence does not sustain any such conclusion; neither does the evidence show that the wing wall and crib were built for the purpose of protecting the road any more than for protecting the abutments of the bridge and to keep the water of the creek from washing in behind the abutments. It is true that the purpose must have been to preserve the highway as well as the abutments, but it cannot be said that either the wing or the crib was constructed for the purpose of holding up the " embankment," so called, which constitutes the highway. The bridge in question was built in 1882. The masonry wing wall and the cribs were constructed at the same time. The highway construction extends up to and comes in contact with the floor of the bridge and with the abutment thereof, and for a distance of 100 feet approximately there is no perceptible change in the grade of the highway. The grade of the level of the bridge is the level of the land back a long distance therefrom and it cannot be said as stated in the decision of the trial court that the " embankment or fill with its supporting walls was constructed many years before the State improved the highway in 1907 or 1908 as a means of access to the easterly end of the bridge super-structure " and that it constituted the " approach to the bridge and a part of the bridge structures." It might as well be said, and the evidence bears out as fully the theory, that the bridge was built up to the necessary height above the level of the creek in order to bring it to the level of the highway rather than to claim that the highway was built up to bring it to the level of the bridge. When this highway was taken over in the county highway system, it was covered with a course of macadam six inches in depth and the

width of the driven portion thereof was somewhat widened. The natural result was the creation of a steeper slope from the driven portion of the driveway to the water.

The respondent's brief cites numerous cases to establish the proposition that " an approach or embankment constructed to furnish access to a bridge is a part of the bridge to be maintained as a part thereof by the owner." That statement cannot be disputed. The only question here is whether or not this is an approach. The numerous cases cited by the respondent do not sustain the proposition that the condition that exists in the instant case constitutes an approach. In every cited case there is an elevation of a street or of an abutment to get the necessary elevation of grade of the street up to the bridge and in certain cases retaining walls were constructed for the purpose of holding the street in place. It is not necessary to review the many cases referred to inasmuch as none of them throws any light upon the present state of facts.

The appellant aptly states: " There is not only no evidence of any artificial construction and, therefore, no evidence of any ' approach ' within the technical and legal meaning of that term as used in the cases — the evidence is all the other way. There is no necessity for any built-up structure to connect the highway as it approaches from the east with the east end of the bridge. If the State seeks to establish that there was an approach to this bridge it should at least sustain the burden of showing that at some time there had been an artificial fill."

The plans and specifications for the construction of this State and county highway provided for highway construction to the floor of the bridge. It is evident that at that time there was no thought of the so-called approach being a part of the bridge.

The opinion of this court on the first appeal of this case (197 App. Div. 716), where there was a review of a judgment of nonsuit, held: " The evidence is, therefore, quite satisfactory that the defect in the highway, from a want of barriers, if there was a defect, was the fault of the State and not of the town authorities." The testimony of the State, taken on the second trial has not changed this conclusion.

Having arrived at the conclusion that the location in the highway where the accident occurred was one which the State was bound to maintain and protect and that the court below erred in its determination or finding that the liability, if any, was against the town, we do not deem it necessary to review the exceptions taken to the refusal to admit certain testimony regarding the construction of a guardrail after the accident.

The judgment should be reversed and a new trial ordered, with

**102** Andes Co-Operative Dairy Co. *v.* Commercial C. Ins. Co.

Third Department, November, 1923. [Vol. 207

costs to the appellant to abide the event. We disapprove of findings of fact Nos. 15 and 20 and also of all findings or parts of findings wherein it is found that the place of the accident was an approach to the bridge.

Cochrane, P. J., H. T. Kellogg, Van Kirk and Hinman, JJ., concur.

Judgment reversed on law and facts, and new trial granted, with costs to the appellant to abide the event. The court disapproves of findings of fact numbered 15 and 20 and also of all findings or parts of findings wherein it is found that the place of the accident was an approach to the bridge.